IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| MOUNTAINTRUE and CENTER FOR BIOLOGICAL DIVERSITY, <br><br>Plaintiffs, <br><br>v. <br><br>UNITED STATES FOREST SERVICE, ACTING FOREST SUPERVISOR CAVAN FITZSIMMONS, and APPALACHIAN DISTRICT RANGER JEN BARNHART, <br><br>Defendants. | Civil Case No. 1:25-cv-00393 |

**PLAINTIFFS' COMBINED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiffs MountainTrue and Center for Biological Diversity (collectively, "Conservation Groups"), respectfully move for emergency and preliminary relief to enjoin the Defendant U.S. Forest Service's approval of an illegal salvage logging project in Poplar, North Carolina (the "Project"). Because the logging is ongoing and irreparable harm is already occurring, Conservation Groups respectfully request

this Court issue a temporary restraining order enjoining logging operations within the Project area by Wednesday, November 12.

Pursuant to Local Rule 7.1(b), Plaintiffs conferred with opposing counsel to obtain Defendants' position on Plaintiffs' request. Defendants oppose Plaintiffs' request for emergency and preliminary relief but agree that the Court should rule on Plaintiffs' request for a temporary restraining order by November 12. Defendants will file a response to Plaintiffs' request on Monday, November 10.

Further, Conservation Groups request that the Court order expedited briefing and a hearing on their preliminary injunction request as soon as practicable. As explained in the accompanying memorandum, Conservation Groups meet the requirements for both a temporary restraining order and preliminary injunction. *See* ECF No. 9.

This matter is urgent. Loggers are currently on-site cutting trees, bulldozing roads and equipment trails, and dragging logs across sensitive habitats. ECF No. 9-1 ¶ 9. This logging is occurring without any lawful authorizations, environmental analysis, or coordination with other agencies. The Forest Service claims it can defer environmental review until after logging is completed, pursuant to a February 26, 2025 emergency authorization. ECF No. 1-6. However, that authorization—which was limited to 15 discrete projects identified by specific locations—does not apply to the Project challenged in this case which is occurring in a different

2

location not subject to the authorization. ECF No. 9-1 ¶¶ 27–28. When Conservation Groups confronted the Forest Service with this fact, the agency did not respond. *Id.* ¶¶ 30–32.

Since learning about this Project two weeks ago, Conservation Groups have repeatedly contacted Defendants seeking documentation for the Project, explaining its legal violations, and asking Defendants to adopt minimum safeguards to protect the Project area's exceptional values—with no success. *Id.* ¶ 24–35; ECF No. 1-5. Accordingly, Conservation Groups initiated this litigation on November 6, 2025. *See* ECF No. 1. Counsel for Conservation Groups served a copy of the Complaint and Summons on the U.S. Attorney in person that same day. ECF No. 9-1 ¶ 42.

Pursuant to Federal Rule of Civil Procedure 65(b) and Local Rule 7.1(b), Conservation Groups have made good faith efforts to confer with opposing counsel to obtain Defendants' position and to determine whether a motion for emergency relief could be avoided:

- About an hour after the complaint was filed, counsel for Conservation Groups sent the complaint by email to agency representatives, attorneys in the Department of Agriculture's Office of the General Counsel ("OGC"), and the Civil Chief Assistant United States Attorney for the Asheville Division of the United States Attorney's Office for the Western District of North Carolina, Gill Beck. ECF No. 9-1 ¶¶ 33–35.

3

- Emails to OGC were not delivered, and counsel for Conservation Groups received a bounce-back email explaining that OGC attorneys are furloughed. However, the email was delivered to agency representatives and Mr. Beck. In that email, counsel for Conservation Groups explained that they would seek emergency preliminary relief from the Court unless the Forest Service agreed to specific commitments to limit the harm from logging. *Id.* ¶ 35. Counsel also asked Mr. Beck to have someone make an appearance on the government's behalf in the case immediately. *Id.*
- Counsel for Conservation Groups continued to discuss the matter with Mr. Beck, who informed counsel that an attorney from the Department of Justice would be handling the case. Counsel for Conservation Groups asked to be connected with the Department of Justice and reiterated the urgent nature of the situation. Mr. Beck informed counsel that a Department of Justice attorney would reach out directly. *Id.* ¶¶ 36–41, 44–46.
- Counsel for Conservation Groups also reached out to two attorneys who work on environmental matters in the Department of Justice and who have appeared before this Court in other cases. Initially, counsel received bounce-back emails stating both attorneys were furloughed during the government shutdown. *Id.* ¶ 43. On November 7, however, Department of Justice

attorney John Tustin contacted counsel for Conservation Groups by email to inform them that he would be making an appearance. *Id.* ¶ 45.

- Counsel for Conservation Groups spoke with Mr. Tustin by phone a short time later. Mr. Tustin indicated that he would attempt to speak with his clients and inform Conservation Groups by 3:00 p.m. whether the Forest Service would be willing to agree to limitations on the Project in the interest of avoiding the need for emergency relief. *Id.* ¶ 45.

- Shortly after 1:00 p.m. on November 7, Mr. Tustin informed counsel for Conservation Groups that the government continues to believe that the Project is covered by the prior emergency authorization, and could not agree to Conservation Groups' requested changes. *Id.* ¶ 46. Conservation Groups then confirmed that they would file this motion today.

Finally, only a nominal bond should be required here. While, under Rule 65(c), the Court must consider whether to require plaintiffs to provide security to cover any costs or damages sustained by a party later found to be wrongfully enjoined, "where plaintiffs are public interest groups who might otherwise be barred from obtaining meaningful judicial review were the bond required more than nominal," courts can determine that circumstances warrant a nominal bond. *Red Wolf Coal. v. U.S. Fish & Wildlife Serv.*, 210 F. Supp. 3d 796, 806–07

(E.D.N.C. 2016) (citing *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999)).

Respectfully submitted, this 7th day of November, 2025.

/s/ Clara Derby
N.C. Bar No. 62330
Spencer Scheidt
N.C. Bar No. 57078
Sam Evans
N.C. Bar No. 44992
SOUTHERN ENVIRONMENTAL LAW CENTER
48 Patton Ave, Suite 304
Asheville, NC 28801-3321
Telephone: 828-258-2023
Facsimile: 828-258-2024
cderby@selc.org;
sscheidt@selc.org;
sevans@selc.org

*Attorneys for Conservation Groups*

# **CERTIFICATION REGARDING THE USE OF ARTIFICIAL INTELLIGENCE**

Pursuant to this Court's Standing Order entered June 18, 2024, and published to the Bar of the Western District on June 27, 2024, the undersigned hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this Motion, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this Motion has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 7th day of November, 2025.

/s/ Clara Derby
Clara Derby